# In the United States Court of Federal Claims
### No. 13-088C

### (E-Filed:  June 23, 2014)

| | |
|---|---|
| B & H MEDICAL, LLC, | ) |
| | ) |
| Plaintiff, | ) <u>Chevron</u> Deference; Regulatory<br>) Interpretation; Motion to Dismiss<br>) for Lack of Subject Matter |
| v. | ) Jurisdiction under RCFC 12(b)(1);<br>) Motion to Dismiss for Failure to |
| THE UNITED STATES, | ) State a Claim under RCFC<br>) 12(b)(6); Medicare |
| Defendant. | ) Reimbursement Claim. |
| | ) |

<u>Stephen M. Ryan</u>, Bingham Farms, Mich., for plaintiff.

<u>Gregg M. Schwind</u>, Senior Trial Counsel, with whom were <u>Stuart F. Delery</u>, Assistant Attorney General; <u>Bryant G. Snee</u>, Acting Director; and <u>Steven J. Gillingham</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

### OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

Plaintiff has brought suit alleging breach of contract.  In Count I of the complaint, plaintiff alleges that the government's termination of plaintiff's contract to supply diabetic supplies to Medicare recipients effected a breach of contract.  Compl. ¶¶ 1-23, ECF No. 1.  In Count II of the complaint, plaintiff makes a further claim for breach of contract that arises out of a denial of payment after a routine audit in which defendant disallowed certain sales plaintiff made to Medicare recipients.  Id. at ¶¶ 24-44.

The case was transferred to the undersigned on October 29, 2013.  ECF No. 18.  On October 17, 2013, defendant filed a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).  Def.'s

Mot., ECF No. 16.  Plaintiff filed its opposition on February 19, 2014.  Pl.'s Opp'n, ECF No. 24.  Defendant filed a reply on March 4, 2014.  Def.'s Reply, ECF No. 25.  Oral argument was neither requested by the parties nor deemed necessary by the court.  ECF No. 26.  Defendant's motion is ripe for consideration.

For the reasons explained below, defendant's motion to dismiss is **DENIED** as to Count I, and **GRANTED** as to Count II.

I.      Count I - Breach of Contract Under Competitive Bidding

The facts pertaining to the contract termination alleged in Count I are identical to those in the matter of Cardiosom, L.L.C. v. United States, No. 08-533C, 2014 WL 1709332 (Fed. Cl. Apr. 30, 2014).  In Cardiosom, the government presented the same argument for dismissal that it now offers here.  Defendant acknowledges as much in its motion.  Def.'s Mot. 7 (stating that "the facts and issues in Cardiosom [v. United States, No. 08-533], are very similar to those in this case, and because the [Federal Circuit decision, Cardiosom, L.L.C. v. United States, 656 F.3d 1322 (Fed. Cir. 2011)] is binding precedent on this Court, we address the decision in some depth here.").  Based on the factual congruity between the Cardiosom case and this one, the court draws heavily from its April 30, 2014 Cardiosom opinion in its analysis here.

The facts of this case are not in dispute.  A detailed recitation of the facts relating to both contract formation and termination was set forth in the previous decisions of both the Federal Circuit and this court.  See Cardiosom, 656 F.3d at 1324-25, rev'g 91 Fed. Cl. 659 (2010); Cardiosom, L.L.C. v. United States, 91 Fed. Cl. 659, 660-62 (2010), rev'd, 656 F.3d 1322 (Fed. Cir. 2011).  Here the court provides an abbreviated summary of the facts particular to this matter.

A.      Background

B&H Medical, LLC (plaintiff or B&H) contracted with the Centers for Medicare & Medicaid Services (CMS) of the Department of Health & Human Services (defendant or HHS) to provide diabetic supplies in nine different metropolitan areas.  Compl. ¶¶ 4, 6.  The contract became effective on July 1, 2008.  Id. at ¶ 6.

On July 15, 2008, Congress passed legislation terminating all contracts, including plaintiff's, that had been issued under what was known as Round 1 of HHS's plan to redefine the way in which it purchased durable medical equipment through the Medicare program.  42 U.S.C. § 1395w-3.  Section 1395w-3, which is alternately known as Section 154 of the 2008 Medicare Improvements for Patients and Providers Act (MIPPA)

or the 2008 Amendment, included a provision withdrawing the right to administrative or judicial review "with regard to the termination."  § 1395w-3(a)(1)(D)(i) (judicial review withholding provision).

HHS then promulgated a regulation in which it established an administrative process through which it would pay specified damages to terminated suppliers.  42 C.F.R. § 414.425.  The regulation provided that CMS would make the determination regarding which of the claimed damages were compensable, and provided that CMS's "determination [would be] final and not subject to administrative or judicial review." § 414.425(f)(2)(vi).  The requisite notice and a public comment period preceded the promulgation of the regulation.  See Def.'s Mot. 4 (citing 74 Fed. Reg. 61,738-01 (Nov. 25, 2009)).

B&H submitted a damages claim through the CMS administrative process in February 2010, and at the request of CMS, provided supplemental information in June 2010.  Compl. ¶¶ 13, 15.  CMS offered B&H partial payment on its claim in April 2012, id. at ¶ 20, which B&H declined to accept on the basis of its inadequacy, Pl.'s Opp'n 2, ECF No. 24.

In August 2011, the Federal Circuit issued a ruling in the Cardisom matter, holding that § 1395w-3 "did not withdraw traditional contract jurisdiction under the Tucker Act [and determining that] plaintiff states a claim over which the Court of Federal Claims has jurisdiction."  Cardiosom, 656 F.3d at 1324.  The Federal Circuit elaborated:

> [a]s we read it, the 2008 Amendment left open the question of the consequences of Congress's chosen route, and any private remedies arising therefrom.  More specifically, the amendment left untrammeled the subject matter jurisdiction of the Court of Federal Claims to hear and decide breach of contract claims resulting from these terminations.  Whatever may be the rule regarding nonreviewability of the act of termination, or the absence of challenge to the administrative remedy authorized, the legal consequences of the terminations can still be determined under existing federal law governing contract disputes with the Government.

Cardiosom, 656 F.3d at 1330 (emphasis added).

The Federal Circuit also observed that the meaning of the judicial review withholding provision in § 1395w-3 was susceptible to at least three meanings, any of which was consistent with Congress's apparent purpose.  See id. at 1327-29.  First,

Congress could have intended that the statute not be read to provide an 'independent cause of action or right to administrative or judicial review with regard to the termination,' with respect to the structure of the administrative compensation mechanism established by the Secretary, or perhaps even to the rewards from the special fund created by the statute.

Id. at 1328.  Second, a "somewhat different but equally plausible, interpretation of the judicial review withholding provision is that there is to be no independent judicial review of Congress's decision to terminate the existing contracts."  Id. at 1329.  And third, a

possible reading of the statutory language is that it is intended to prevent judicial or administrative review by third parties. That is, [the term] 'independent' [as it appears] in the statute could be interpreted to mean 'independent of the contracting parties,' precluding litigation over collateral damages arising out of the terminations.

Id.

Finally, the Federal Circuit observed that "there are questions with regard to the interaction of this administrative process with the established judicial process for resolving Government contract disputes under the Tucker Act," and that it was not clear "whether an aggrieved supplier who obtains only a partial recovery of damages through the administrative process . . . could thereafter maintain a court suit for other damage elements," leaving the resolution of this question to the trial court.  Id. at 1328-29.

The statutory language at issue is set forth in its entirety below.

(D) Changes in competitive acquisition programs

(i)   Round 1 of competitive acquisition program

. . . .

(I) the contracts awarded under this section before July 15, 2008, are terminated, no payment shall be made under this subchapter on or after July 15, 2008, based on such a contract, and, to the extent that any damages may be applicable as a result of the termination of such contracts, such damages shall be payable from the Federal Supplementary Medical Insurance Trust Fund under section 1395t of this title;

. . . .

(IV) . . .

<u>Nothing in subclause (I) shall be construed to provide an independent cause of action or right to administrative or judicial review with regard to the termination provided under such subclause.</u>

§ 1395w-3(a)(1)(D)(i) (emphasis added).

HHS established an administrative process through which aggrieved suppliers could submit damages claims, and the agency interpreted the judicial review withholding provision to mean that the "Determining Authority's determination is final and not subject to administrative or judicial review." § 414.425(f)(2)(vi). The Determining Authority in that administrative process is CMS. § 414.425(f)(2).

Defendant now moves for dismissal of Count I of B&H's complaint for both lack of jurisdiction and failure to state a claim upon which relief may be granted.

B.      Defendant's Rule 12(b)(1) Motion

Defendant acknowledges that the Federal Circuit has held that this court has jurisdiction over the breach of contract claim asserted here. But defendant argues that such jurisdiction does not extend to the claim of a supplier to whom CMS offered partial payment through its administrative process, such as CMS offered to B&H.

> [A]lthough the <u>Cardiosom</u> court held that the Court of Federal Claims has jurisdiction to review a breach of contract claim, the limits of that jurisdiction remain undefined. Specifically left unanswered – and very relevant to B&H's claim in this case – was whether a . . . supplier whose contract was terminated may seek damages beyond those awarded as a result of the CMS administrative process established in 42 C.F.R. § 414.425. [<u>Cardiosom</u>, 656 F.3d] at 1329. In fact, the Court of Appeals suggested that such a suit cannot be maintained. <u>Id.</u> ("Less clear is whether an aggrieved supplier who obtains only a partial recovery of damages through the administrative process . . . could thereafter maintain a court suit for other damage elements, such as loss of profits . . . .").

Def.'s Mot. 9.

Defendant argues that given the ambiguity identified by the Federal Circuit in the judicial review withholding provision, as evidenced by the three possible meanings described by the circuit court, this court must review the implementing regulation, § 414.425(f)(2)(vi), with <u>Chevron</u> deference.  <u>See</u> <u>id.</u> at 10-13 (citing <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984)).  Defendant contends that because the regulation "is clear on its face in barring any judicial review, this Court must find that it lacks jurisdiction."  <u>Id.</u> at 13.  Defendant urges that a correct application of <u>Chevron</u> deference compels the court to find that the agency's determination is final and that the court "has no authority to review the damages award."  <u>Id.</u> at 14.  Defendant asserts that the court "should, therefore, dismiss Count I of B&H's complaint."  <u>Id.</u>

For the reasons explained below, the court finds that the judicial review withholding provision upon which defendant relies, 42 C.F.R. § 414.425(f)(2)(vi), is not entitled to <u>Chevron</u> deference.  As previously held by the Federal Circuit, this court has jurisdiction to hear plaintiff's claim.  <u>See</u> <u>Cardiosom</u>, 656 F.3d at 1324.

       1.     Standard of Review

Pursuant to the Tucker Act, this court has limited jurisdiction to hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States."  28 U.S.C. § 1491(a) (2012).  The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action.  <u>Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.</u>, 525 F.3d 1299, 1306 (Fed. Cir. 2008).  A plaintiff, therefore, must satisfy the court that "a separate source of substantive law . . . creates the right to money damages."  <u>Id.</u> at 1306 (internal quotation marks omitted).

"[I]n the area of government contracts . . . there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement."  <u>Holmes v. United States</u>, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (internal quotation marks omitted); <u>see also</u> <u>United States v. Winstar Corp.</u>, 518 U.S. 839, 885 (1996) (plurality opinion) (noting that "damages are always the default remedy for breach of contract").  This presumption provides a money-mandating source.

If subject matter jurisdiction is challenged, plaintiff must establish the court's jurisdiction by a preponderance of the evidence.  <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988).  When a jurisdictional challenge is raised in a motion to dismiss, "the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings."  <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (internal quotation marks omitted). The court may look,

however, beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists.  <u>Rocovich v. United States</u>, 933 F.2d 991, 993 (Fed. Cir. 1991).  If the Court determines that it lacks subject matter jurisdiction, it must dismiss the complaint.  RCFC 12(h)(3).

2. <u>Chevron</u> Deference is Not Appropriate Here

a. The Applicable Legal Standard

A recent Court of Federal Claims decision set forth a useful discussion of <u>Chevron</u> deference.

> Under <u>Chevron</u>, this court first must determine "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984).  To determine the intent of Congress, the court looks to the language of the statute itself.  <u>Delverde, SrL v. United States</u>, 202 F.3d 1360, 1363 (Fed. Cir. 2000).  Beyond the statute's text, tools of statutory construction may be used, including the statute's structure, canons of statutory construction, and legislative history.  <u>Id.</u>; <u>see also</u> <u>Heino v. Shinseki</u>, 683 F.3d 1372, 1378 (Fed. Cir. 2012).  "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  <u>Chevron</u>, 467 U.S. at 843 n.9.

> However, "if the statute is silent or ambiguous with respect to the specific issue," a court must proceed to the second step of <u>Chevron</u>, which is to ask whether the implementing agency's interpretation of the statute is reasonable.  <u>Id.</u> at 843; <u>see also</u> <u>Ad Hoc Shrimp Trade Action Comm. v. United States</u>, 596 F.3d 1365, 1369 (Fed. Cir. 2010).  The court must not "impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation."  <u>Chevron</u>, 467 U.S. at 843 (footnote omitted).  Rather, "<u>Chevron</u> requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation."  <u>Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.</u>, 545 U.S. 967, 980 (2005) (citation omitted).

7

In determining whether an agency's interpretation of a statute is reasonable, an agency's construction is entitled to deference if it is not in conflict with the plain language of the statute or the congressional intent or purpose of the statute. See Nat'l R.R. Passenger Corp. v. Boston & Me. Corp., 503 U.S. 407, 417 (1992) ("If the agency interpretation is not in conflict with the plain language of the statute, deference is due."); Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 233 (1986); Chem. Mfrs. Ass'n v. NRDC, Inc., 470 U.S. 116, 126 (1985) ("We should defer to [the agency's] view unless the legislative history or the purpose and structure of the statute clearly reveal a contrary intent on the part of Congress."). In addition, an agency's interpretation of a particular statutory provision qualifies for Chevron deference when that interpretation is reached through formal proceedings, such as by an agency's power to engage in notice-and-comment rulemaking. United States v. Mead Corp., 533 U.S. 218, 229 (2001); Wheatland Tube Co. v. United States, 495 F.3d 1355, 1360 (Fed. Cir. 2007).

Kingdomware Techs., Inc. v. United States, 107 Fed. Cl. 226, 237-38 (2012).

"Chevron deference . . . is not accorded merely because the statute is ambiguous and an administrative official is involved. To begin with, the rule must be promulgated pursuant to authority Congress has delegated to the official." Gonzales v. Oregon, 546 U.S. 243, 258 (2006) (citing Mead Corp., 533 U.S. at 226-27). Under Chevron step two, a court need not defer to an agency rule that is "'arbitrary or capricious in substance, or manifestly contrary to the statute.'" Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704, 711-12 (2011) (quoting Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 242 (2004)).

b.     The Positions of the Parties

The parties disagree regarding whether defendant is entitled to Chevron deference for its regulation interpreting § 1395w-3(a)(1)(D)(i). Defendant asserts deference to the regulation is due because

the holding in Cardiosom [656 F.3d 1322 (2011)] that the judicial review provision in Section 154 is ambiguous means that in order to determine the effect of Section 154, the Court first must consider HHS's regulatory construction of that section. In doing so, the Court must evaluate, under the ordinary Chevron analysis, the validity of the HHS regulation implementing the statute. If the Court finds the HHS regulation is a permissible interpretation of the statute, then the Court must defer to the

regulation.   Deference to the HHS regulation, which bars further administrative and judicial review, requires dismissal of B&H's complaint.

Def.'s Mot. 10.

Plaintiff disagrees, asserting that HHS

does not have the authority pursuant to its rulemaking powers to rule as to Tucker Act jurisdiction. And even though the Government argues about the interplay as between Section 154 and [42 C.F.R. § 414.425] as set forth in the three unanswered questions listed in Cardiosom [656 F.3d at 1328-29], none of these three unanswered questions has anything to do with Tucker Act jurisdiction and this Court – Cardiosom has ruled that this Court has untrammeled jurisdiction under the Tucker Act to hear and decide all issues from breach of contract claims such as B&H's.

Pl.'s Opp'n 14-15.

Pointing to the source of HHS's authority to promulgate rules implementing the Medicare program, 42 U.S.C. § 1302, and to the delegation to the Secretary to make such rules and regulations "as are necessary for 'the efficient administration of the functions with which each is charged under the Medicare Act,'" plaintiff argues that a regulation precluding Tucker Act jurisdiction "would indisputably be ultra vires." Id. at 11.

Plaintiff also points out that defendant's characterization notwithstanding, its breach claim in this court is not a request for judicial review, thus the statutory and regulatory provisions cited by defendant are simply inapposite. Id. at 4 (citing 42 U.S.C. § 1395w-3(a)(1)(D)(i); 42 C.F.R. § 414.425(f)(2)(vi)).

Defendant replies that "in the wake of Cardiosom [656 F.3d 1322 (2011)], our motion to dismiss presents the legal question the Federal Circuit intentionally left unanswered, and relies upon ordinary Chevron rules of statutory interpretation." Def.'s Reply 4, ECF No. 25.

The unanswered legal question to which defendant refers is

whether an aggrieved supplier who obtains only a partial recovery of damages through the administrative process—i.e., for those elements of damage recoverable through that process—could thereafter maintain a court suit for other damage elements, such as loss of profits (assuming the terms

of the original contract do not preclude such additional elements of damage).

Cardiosom, 656 F.3d at 1329.

c.     Discussion

Plaintiff correctly asserts that defendant has no authority to limit this court's jurisdiction through its rule making powers.  A federal court owes no deference to an agency's interpretation of the court's subject matter jurisdiction.

"[T]he Supreme Court has repeatedly affirmed that federal courts have an independent obligation to determine their own subject-matter jurisdiction." Shweika v. Dep't of Homeland Security, 723 F.3d 710, 719 (6th Cir. 2013) (citing Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998)).

As discussed below, numerous circuit courts have considered whether Chevron deference is due to an agency regulation interpreting a statutory judicial review provision, and have found uniformly that no Chevron deference is given because the task of determining a federal court's jurisdiction falls to the court, not an agency.[1]  Courts have reasoned that no deference is warranted when an agency's regulation purporting to construe a court's subject matter jurisdiction "proceed[s] neither from a congressional delegation nor from agency expertise." Murphy Exploration & Prod. Co. v. U.S. Dep't of Interior, 252 F.3d 473, 479 (D.C. Cir. 2001), modified on denial for reh'g, 270 F.3d 957 (D.C. Cir. 2001); see also Friends of the Everglades v. U.S. EPA, 699 F.3d 1280, 1285 (11th Cir. 2012) ("[T]he Court owes no deference to an agency's interpretation of a statute that defines this Court's subject matter jurisdiction.") (quoting Sierra Club v. Leavitt, 355 F. Supp. 2d 544, 548 (D.D.C. 2005)); Fox Television Stations, Inc. v. FCC, 280 F.3d 1027, 1038-39 (D.C. Cir. 2002) (citing Adams Fruit Co. v. Barrett, 494 U.S. 638, 650 (1990) ("Nor is an agency's interpretation of a statutory provision defining the jurisdiction of the court entitled to our deference under Chevron."), modified on reh'g, 293 F.3d 537 (D.C. Cir. 2002); Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000) ("[A]ssuming the ambiguity of the statutory terms . . . the fact that courts defer to the INS's construction of its statutory powers of deportation does not mean that similar deference is warranted with respect to the enforcement of this court's jurisdictional

---

[1]     The Supreme Court has concluded that Chevron deference applies to an agency's interpretation of its own jurisdiction, making clear, however, that agency jurisdiction and federal court jurisdiction are distinct concepts.  See City of Arlington, Tex. v. FCC, 133 S. Ct. 1863, 1868 (2013).

10

limitations. . . . [T]he determination of our jurisdiction is exclusively for the court to decide.").

In Murphy Exploration, the D.C. Circuit Court of Appeals relied on Adams Fruit Company for the proposition that an agency has no authority to determine a federal court's jurisdiction.  Murphy Exploration, 252 F.3d at 479.  The statute in question conferred "jurisdiction on courts to consider challenges to 'administrative proceedings' that the agency fail[ed] to resolve within 33 months after they [were] commenced," and the plaintiff who brought the action disputed the agency's determination regarding what event triggered the running of the 33-month time period.  Id. at 475.  The circuit court observed:

> It is true that the statute before us contemplates a regulatory role for the agency. However, the implicit delegation of duties concerning the regulations for administrative appeals is limited to precisely that subject and does not extend by its terms or placement to any implication of authority to the agency to "regulate the scope of the judicial power vested by the statute." [Adams Fruit Co., 494 U.S. at 650.]. As Justice Marshall wrote in Adams Fruit, the fact that "Congress envisioned . . . a role for [an administrative agency] in administering [a] statute," by itself "does not empower the Secretary to regulate the scope of the judicial power vested by the statute." Id. Just so here. The fact that an agency has made a determination such as the establishment of regulations governing administrative appeals, does not empower it to "'bootstrap itself in an area in which it has no jurisdiction,'" id. (quoting Federal Maritime Comm'n v. Seatrain Lines, Inc., 411 U.S. 726, 745 (1973) (specifically the grant of jurisdiction to the courts)).

> Moreover, administrative agencies have no particular expertise in determining the scope of an Article III court's jurisdiction. Of course, "practical agency expertise is one of the principal justifications behind Chevron deference." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 651-52 (1990). Absent congressional delegation, if an agency has promulgated a regulation outside the scope of its specialized knowledge, courts will not defer to it. See, e.g., Professional Reactor Operator Soc'y v. NRC, 939 F.2d 1047, 1051 (D.C. Cir. 1991) (affording no Chevron deference to agency interpretations of statutes "outside the agency's particular expertise and special charge to administer"). It goes without saying that the jurisdiction of the federal courts is outside agencies' expertise. See, e.g., Florida Manufactured Hous. Ass'n, Inc. v. Cisneros, 53

F.3d 1565, 1574 n.2 (11th Cir. 1995); Ramey, 9 F.3d at 136 n.7 (explaining that "agencies can bring no particular expertise to the subject").

Id. at 479.

The Ninth Circuit Court of Appeals recently considered a case in which the agency promulgated a regulation to address a statutory ambiguity regarding the time for filing. Dandino, Inc. v. U.S. Dep't of Transp., 729 F.3d 917, 920 n.1 (9th Cir. 2013). The statute provided a 30 day time period but failed to specify from what event the 30 days was to be counted. Id. The agency supplied the operative event by promulgating a regulation that deemed a filing to be timely if made within 30 days of service of the Final Agency Order. Id. The circuit court stated:

> The [U.S. Department of Transportation] has promulgated a regulation that may conflict with our holding. The regulation, 49 C.F.R. § 386.67(a), parrots the text of [49 U.S.C. § 521(b)(9)], except that it addresses the ambiguity by explaining that a party may petition a court of appeal for review "within 30 days of service of the Final Agency Order." 49 C.F.R. § 386.67(a) (emphasis added). We do not defer to the DOT's regulation. It is well-established that "[t]he Agency's position on [our] jurisdiction is not entitled to deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)." Our Children's Earth Found. v. EPA, 527 F.3d 842, 846 n.3 (9th Cir. 2008); see also Lindstrom v. United States, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007) ("Determining federal court jurisdiction is exclusively the province of the courts regardless of what an agency may say.") (internal quotation marks and citation omitted); Murphy Exploration & Prod. Co. v. U.S. Dep't of the Interior, 252 F.3d 473, 478 (D.C. Cir. 2001) ("Chevron [deference] does not apply to statutes that . . . confer jurisdiction on the federal courts."); Bamidele v. INS, 99 F.3d 557, 561 (3d Cir. 1996) ("A statute of limitations is not a matter within the particular expertise of the INS. Rather, we consider this a clearly legal issue that courts are better equipped to handle.") (internal quotation marks and citation omitted).

Id.

Similar to other circuits, the Federal Circuit has determined that if the agency's interpretation of a statute does not call upon the agency's expertise, the court "should refuse to enforce" the interpretation. United States v. Grumman Aerospace Corp., 927

F.2d 575, 582 (Fed. Cir. 1991).  The Federal Circuit has advised further:

> Courts appropriately accord considerable weight to interpretations of an agency with expertise when a statute is ambiguous.  Chevron, 467 U.S. at 844.  As we said in Wilson v. United States, 917 F.2d 529, 535-36 (Fed. Cir. 1990) (citing Chevron, 467 U.S. at 842-44), "when a statute is silent or ambiguous with respect to the specific issue, the administrative agency's interpretation, if reasonable, is to be followed by the court."  Courts thus acknowledge the proper role for experts in policymaking.  At the same time, we should refuse to enforce agency interpretations when the statute is not ambiguous and when the interpretation neither demands expertise of any agency nor accords with the thrust of the statute.  Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368 (1986).  As was said in Office of Communication of the United Church of Christ v. Federal Communications Commission, 707 F.2d 1413, 1422-23 (D.C. Cir. 1983), '[t]o do otherwise would risk diluting the judiciary's power to stand guard against bureaucratic excesses by ensuring that administrative agencies remain within the bounds of their delegated authority. Indeed, it is the quintessential function of the reviewing court to interpret legislative delegations of power and to strike down those agency actions that traverse the limits of statutory authority."

Id.; see also Hartman v. United States, 694 F.3d 96, 98 n.1 (Fed. Cir. 2012) ("We see no reason why our review of tax regulations should not be guided by agency expertise pursuant to Chevron to the same extent as our review of other regulations.") (quoting Mayo Found. for Med. Educ. & Research, 131 S. Ct. at 713).

The case law reflects a consistent view regarding the limits of Chevron deference. Such "'deference is not required where the interpretation of a particular statute does not implicate agency expertise in a meaningful way.'" Ibarra v. Holder, 736 F.3d 903, 918 n.19 (10th Cir. 2013) (quoting Singh v. Ashcroft, 383 F.3d 144, 151 (3d Cir. 2004)).

The judicial review withholding provision at issue in the instant motion states that "[n]othing in subclause (I) shall be construed to provide an independent cause of action or right to administrative or judicial review with regard to the termination provided under such subclause." § 1395w-3(a)(1)(D)(i)(IV).  "Courts of appeals uniformly agree, across a variety of contexts, that the expression 'shall not be subject to judicial review' imposes a jurisdictional limitation when included in a statutory provision."  Shweika, 723 F.3d at 718 n.3 (citing J.S. v. T'Kach, 714 F.3d 99, 103-04 (2d Cir. 2013) (witness-relocation statute); Morris v. Office of Compliance, 608 F.3d 1344, 1347 (Fed. Cir. 2010)

13

(Congressional Accountability Act); <u>Sierra Club v. Otter Tail Power Co.</u>, 615 F.3d 1008, 1020 (8th Cir. 2010) (Clean Air Act); <u>Al–Siddiqi v. Achim</u>, 531 F.3d 490, 494 (7th Cir. 2008) (statute authorizing detention of aliens); <u>Jordan Hosp., Inc. v. Shalala</u>, 276 F.3d 72, 77 (1st Cir. 2002) (Medicare Act); <u>Nat'l Coal. to Save Our Mall v. Norton</u>, 269 F.3d 1092, 1095 (D.C. Cir. 2001) (statute approving construction of a World War II memorial)).

The language at issue in MIPPA, § 1395w-3(a)(1)(D)(i), clearly purports to impose a limitation on federal court jurisdiction.  And, as defendant asserts, the language of § 414.425(f)(2)(vi), which provides that "the HHS 'determination is final and not subject to administrative or judicial review,'" is intended to bar this court's jurisdiction over plaintiff's complaint.  <u>See</u> Def.'s Mot. 13.

Although HHS possesses the expertise to administer the Medicare program generally, it is without the expertise to determine a federal court's subject matter jurisdiction.  Rather, it is the federal courts that "are [the] experts when it comes to determining the scope of federal-court subject-matter jurisdiction."  <u>Shweika</u>, 723 F.3d at 718 (citing <u>Murphy Exploration</u>, 252 F.3d at 479).  Consistent with the Federal Circuit's guidance, and that of numerous other circuits, the court does not defer to an agency's regulatory interpretation that purports to define the court's subject matter jurisdiction.  Thus, defendant is entitled to no <u>Chevron</u> deference for its interpretation of 42 C.F.R. § 414.425(f)(2)(vi).

Moreover, it is unnecessary for the court to consider whether § 1395w-3(a)(1)(D)(i) precludes this court's jurisdiction over plaintiff's claim, because the Federal Circuit has said it does not.  <u>See</u> <u>Cardiosom</u>, 656 F.3d at 1324.

The court has jurisdiction to consider plaintiff's claim.  Defendant's motion to dismiss Count I for lack of jurisdiction is **DENIED**.

The court now considers defendant's argument that plaintiff fails to state a claim for which relief may be granted.

C.      Defendant's Rule 12(b)(6) Motion

Defendant alternately brought a motion to dismiss Count I under Rule 12(b)(6).  Def.'s Mot. 1.  Asserting that under a correct application of "<u>Chevron</u> deference, the agency determination is final and this Court has no authority to review the damages award," defendant argues that the court "should . . . dismiss Count I of B&H's

complaint." Id. at 14.  In support of its position, defendant again points to its interpretation of the implementing regulation, 42 C.F.R. § 414.425(f)(2)(vi).  Id. Defendant avers that its regulatory interpretation merits Chevron deference.  Id.

Defendant's request for deference to its regulatory interpretation is properly analyzed under Auer v. Robbins, 519 U.S. 452, 461 (1997) (stating that an agency's interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted).  For the reasons discussed below, the court finds that: (1) HHS's interpretation of the pertinent regulation 42 C.F.R. § 414.425(f)(2)(vi) is not entitled to Auer deference; and (2) the regulation does not preclude plaintiff's Tucker Act claim.

   1.  The Applicable Legal Standards

    a.  Motion to Dismiss

A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  RCFC 8(a)(2). This "pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007) (interpreting pleading standards under identical Fed. R. Civ. P. 8(a)(2)).

The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). When evaluating a motion to dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(6), the court must accept the allegations contained in the complaint as true and construe them in the manner most favorable to the non-moving party.  Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 n.13 (Fed. Cir. 1993).  The court's 12(b)(6) inquiry is limited to examining the facts pled in the complaint. See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1164 (Fed. Cir. 1993).

    b.  Deference to an Agency's Interpretation of Its Regulation Is Inappropriate in Certain Circumstances

An agency's interpretation of its own regulation is generally entitled to substantial deference.

An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulations being interpreted."

Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 171 (2007) (internal quotation marks omitted); see Auer v. Robbins, 519 U.S. 452, 461 (1997); Haas v. Peake, 525 F.3d 1168, 1186 (Fed. Cir. 2008); see also Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (holding that an agency's interpretation of its regulations is entitled to "substantial deference" unless "an alternative reading is compelled by the regulation's plain language").

Mason v. Shinseki, 743 F.3d 1370, 1374-75 (Fed. Cir. 2014). The Supreme Court has limited the application of Auer to instances in which the regulation is ambiguous.

In Auer, we held that an agency's interpretation of its own regulation is entitled to deference. [Auer, 519 U.S. at 461.] See also Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945). But Auer deference is warranted only when the language of the regulation is ambiguous. The regulation in this case, however, is not ambiguous—it is plainly permissive. To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation. Because the regulation is not ambiguous . . . Auer deference is unwarranted.

Christensen v. Harris County, 529 U.S. 576, 588 (2000). Recently, the Supreme Court provided further guidance on the application of Auer.

Although Auer ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation, even when that interpretation is advanced in a legal brief, see Chase Bank USA, N.A. v. McCoy, 562 U.S. ——, ——, 131 S. Ct. 871, 880 (2011); Auer, 519 U.S. at 461-62, this general rule does not apply in all cases. Deference is undoubtedly inappropriate, for example, when the agency's interpretation is "'plainly erroneous or inconsistent with the regulation.'" Id., at 461 (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)). And deference is likewise unwarranted when there is reason to suspect that the agency's interpretation "does not reflect the agency's fair and considered judgment on the matter in question." Auer, supra, at 462; see also, e.g., Chase Bank, supra, at ——, 131 S. Ct. at 881. This might occur when the agency's interpretation conflicts with a prior interpretation, see, e.g., Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994), or when it appears that the interpretation is nothing more than a "convenient litigating position," Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 213 (1988).

Christopher v. Smithkline Beecham Corp., 132 S. Ct. 2156, 2166 (2012).

16

2.      Discussion

HHS promulgated the regulation, § 414.425(f)(2)(vi), through its "rulemaking authority which is explicitly contained within its broad statutory authority to administer the Medicare program Part B."  See Def.'s Reply 6 (citing, inter alia, 42 U.S.C. § 1302); see also Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 826 (2013) ("Congress vested in the [HHS] Secretary large rulemaking authority to administer the Medicare program.").  In Cardiosom, the Federal Circuit said that the judicial withholding provision, § 1395w-3(a)(1)(D)(i), in the governing statute was subject to three possible interpretations.  Cardiosom, 656 F.3d at 1327-29.  The Circuit Court's view that several potential interpretations exist for this statutory provision would appear to support a finding that HHS's interpretation of the ambiguous provision is entitled to deference—provided the agency's implementing regulation is "based on a permissible construction of the statute."  See Chevron, 467 U.S. at 843.

The text of the pertinent regulation states: "The Determining Authority's determination is final and not subject to administrative or judicial review." § 414.425(f)(2)(vi).  The "Determining Authority" is identified as CMS. § 414.425(f)(2). The regulatory language comports with one of the possible interpretations offered by the Federal Circuit.  See Cardiosom, 656 F.3d at 1328 (specifically that "Congress could have intended that the statute not be read to provide . . . judicial review with regard to . . . the rewards from the special fund created by statute.").  Accordingly, the court does not disagree that § 414.425(f)(2)(vi) is based on a permissible construction of 1395w-3(a)(1)(D)(i).[2]

HHS's interpretation of § 414.425(f)(2)(vi), however, is another matter.  HHS construes the regulation to prevent an aggrieved supplier—who has been offered payment on a damages claim through the CMS administrative process—from maintaining a

---

[2]      Had this court analyzed defendant's deference argument under Chevron, no deference would have been given to defendant's interpretation.  See Schuler Indus., Inc. v. United States, 109 F.3d 753, 755 (Fed. Cir. 1997) ("[L]egislative regulations are entitled to 'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'") (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)); see also Rite Aid Corp. v. United States, 255 F.3d 1357, 1359 (Fed. Cir. 2001) ("A regulation is manifestly contrary to the statute if it is outside the scope of authority delegated under the statute.").  Because § 1395w-3 said nothing about limiting a supplier's claims in this court, defendant's proposed regulatory interpretation exceeds the scope of its delegated authority under the statute.

separate Tucker Act claim for additional damages.  <u>See</u> Def.'s Mot. 13-14 ("[T]he agency determination is final and this Court has no authority to review the damages award.").

Review of the plain language of § 414.425(f)(2)(vi) shows that HHS did not promulgate a regulation that would bar a supplier from bringing a Tucker Act claim for additional damages.  HHS's interpretation of the statute's judicial review withholding provision, § 1395w-3(a)(1)(D)(i), is made clear in the regulation it promulgated through the process of notice and comment rulemaking, § 414.425(f)(2)(vi).  Thus, the agency's position in this litigation reflects its regulatory interpretation and not its statutory interpretation.

Deference to an agency's interpretation of its own regulations is analyzed under <u>Auer v. Robbins</u>, and subsequent cases.  <u>See, e.g.</u>, 3 Charles H. Koch, Jr. et al., <u>Administrative Law and Practice</u> § 10:26[1] ("<u>Auer v. Robbins</u> has become the leading recent authority for the well-established principle that an agency's interpretation of its own rules must be given substantial deference."); <u>see also</u> <u>Decker v. Nw. Envtl. Def. Ctr.</u>, 133 S. Ct. 1326, 1337 (2013) (providing "<u>Auer</u> deference" to the agency's interpretation where there was "no indication that its current view [was] a change from prior practice or a <u>post hoc</u> justification adopted in response to litigation").

"The construction of a regulation is a question of law."  <u>Gose v. U.S. Postal Serv.</u>, 451 F.3d 831, 836 (Fed. Cir. 2006) (citing <u>Kent v. Principi</u>, 389 F.3d 1380, 1384 (Fed. Cir. 2004) "[I]nterpretation of a statute or regulation is a question of law . . . ." (internal quotations omitted)).  "To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning."  <u>Lockheed Corp. v. Widnall</u>, 113 F.3d 1225, 1227 (Fed. Cir. 1997) (citing <u>Perrin v. United States</u>, 444 U.S. 37, 42 (1979)).

Under <u>Christensen</u>, an agency is entitled to <u>Auer</u> deference "only when the language of the regulation is ambiguous," <u>Christensen</u>, 529 U.S. at 588.  In this case, HHS seeks dismissal of plaintiff's Count I claim based on an alleged unavailability of "judicial review" of CMS's administrative decision.  § 414.425(f)(2)(vi).  Thus, to merit <u>Auer</u> deference, the phrase "judicial review" must be ambiguous.

In determining whether <u>Auer</u> deference is merited, the court considers first whether the subject phrase is an ambiguous one, and second, whether HHS's interpretation reflects a fair and considered judgment on the matter at issue.

       a.      The Phrase "Judicial Review" is Not Ambiguous

The court considers below a number of relevant sources—including legal

18

dictionary, statutes, and case law—that show the phrase "judicial review" has a judicially settled meaning, which is not ambiguous.

The Supreme Court has determined that the phrase "judicial review" is a term of art.  See I.N.S. v. St. Cyr, 533 U.S. 289, 313 n.35 (2001) (considering the meaning of "judicial review" and "habeas" in the immigration context and referring to both as "terms of art"), superseded by statute on other grounds, Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief ("Real ID Act"), Pub. L. No. 109-13, 119 Stat. 310 (2005) (codified at 8 U.S.C. § 1252(a)(2)(D)).

The case law instructs that "[w]ords with a fixed legal or judicially settled meaning, where the context so requires, must be presumed to have been used in that sense."  Huffman v. Comm'r, 978 F.2d 1139, 1145 (9th Cir. 1992) (citing 1 Ellie Grinols, Mertens Law of Federal Income Taxation § 3.36 (1991)).  Moreover,

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

Sekhar v. United States, 133 S. Ct. 2720, 2724 (2013) (quoting Morissette v. United States, 342 U.S. 246, 263 (1952)).

The phrase "judicial review" is defined as:

> A court's power to review the actions of other branches or levels of government; esp., the courts' power to invalidate legislative and executive actions as being unconstitutional.  2. The constitutional doctrine providing for this power.  3. A court's review of a lower court's or an administrative body's factual or legal findings.

Black's Law Dictionary 924 (9th ed. 2009).

The Medicare Act (which includes § 1395w-3)[3] provides for judicial review of certain claims.  Specifically, "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same

---

[3]     MIPPA amended Title XVIII of the Social Security Act, commonly known as the Medicare Act.  See Medicare Improvements for Patients and Providers Act of 2008, Pub. L. No. 110-275, 122 Stat. 2494 (codified at 42 U.S.C. § 1395 et seq., as amended).

manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act." <u>Heckler v. Ringer</u>, 466 U.S. 602, 605 (1984) (footnote omitted) (citing 42 U.S.C. § 1395ff(b)(1)(C)). Section 405(g), which pertains to Social Security claims, permits an individual to file a civil action in "the district court of the United States for the judicial district in which the plaintiff resides," to seek review of a decision which "shall be subject to review in the same manner as a judgment in other civil actions." 42 U.S.C. § 405(g).

Judicial review of an agency action has been governed by the Administrative Procedure Act (APA) since 1946. <u>See</u> 5 U.S.C. §§ 701-706. Section 706 of the APA, which governs the scope of judicial review, provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action," and shall do so by "review[ing] the whole record or those parts of it cited by a party." § 706.

From the foregoing references, the meaning of the phrase "judicial review" is clear. "Judicial review" contemplates that a court will review a decision issued by another tribunal. The language of the relevant regulatory provision is as follows: "The Determining Authority's determination is final and not subject to administrative or judicial review." Defendant has pointed to nothing that suggests the phrase "judicial review," as used in § 414.425(f)(2)(vi), is ambiguous, or that the use of the term in the Medicare Act is inconsistent with its commonly understood definition. Because the court does not find the phrase "judicial review" in § 414.425(f)(2)(vi) to be ambiguous, HHS is entitled to no <u>Auer</u> deference for its interpretation of the regulation.

> b. HHS's Proposed Regulatory Interpretation Does Not Reflect Its Fair and Considered Judgment

Had the court found the phrase "judicial review" to be ambiguous, which it does not, defendant still would not merit <u>Auer</u> deference for its interpretation of the regulation. "[D]eference is . . . unwarranted when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" <u>Christopher</u>, 132 S. Ct. at 2166 (quoting <u>Auer</u>, 519 U.S. at 462).

Defendant points to no document—other than the current motion—in which it has interpreted the subject regulation as it does here.[4] Review of both the proposed and final rule, as published in the Federal Register, shows that defendant gave no indication that it

---

[4] The court notes, however, that defendant adopted the same position in the <u>Cardiosom</u> matter. <u>See Cardiosom, L.L.C. v. United States</u>, No. 08-533C, 2014 WL 1709332, at *14-16 (Fed. Cl. Apr. 30, 2014).

20

would interpret the regulation as it now does.  See Medicare Program; Payment Policies Under the Physician Fee Schedule and Other Revisions to Part B for CY 2010, 74 Fed. Reg. 33,520, 33,644 & 33,653 (proposed July 13, 2009); Medicare Program; Payment Policies Under the Physician Fee Schedule and Other Revisions to Part B for CY 2010, 74 Fed. Reg. 61,738, 61,934 & 61,999 (Nov. 25, 2009) (to be codified at 42 C.F.R. § 414.425).

   An agency communicates its intended interpretation of a proposed regulation in its Federal Register notice.  See, e.g., Hillyard v. Shinseki, 695 F.3d 1257, 1260 (Fed. Cir. 2012).  In the Hillyard case, for example, the Veteran's Administration (VA) interpreted a regulation to mean that a veteran to whom it denied benefits could file only one request for revision of that decision, in which the veteran alleged "clear and unmistakable error" (known as a CUE).  Id. at 1258.  Mr. Hillyard disagreed, arguing that the regulation permitted multiple CUE challenges—as long as each presented a new theory.  Id.  The parties' dispute centered on the use of the word "issue" in the regulation, id., which provided that: "Once there is a final decision on a motion . . . relating to a prior Board decision on an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of clear and unmistakable error" 38 C.F.R. § 20.1409(c) (emphasis added).  Mr. Hillyard understood the word "issue" to mean a particular CUE theory, while the VA construed it to refer to the veteran's disability claim.  Hillyard, 695 F.3d at 1258.  The Federal Circuit looked back to the VA's promulgation of the rule 14 years earlier, at which time the VA had discussed its proposed rule with an illustrative example; the offered example made clear that after issuing a decision, the VA would hear only one CUE challenge.  Id.  at 1259 (quoting 63 Fed. Reg. 27,538 (proposed May 19, 1998) (codified at 38 C.F.R. pt. 20)).  The Federal Circuit upheld the agency's regulatory construction, observing that "[t]he interpretation proffered by the VA in this case is no different from the one set forth in its notice of rulemaking and is consistent with the language of the regulation." Id. at 1260.

   In this case, HHS has provided no such clear support for its proposed interpretation in its Federal Register notices.  HHS said in the notices that it was "establish[ing] a one-time process" that "would ensure a thorough review of a supplier's claim for damages" and would "not [be] overly burdensome to those suppliers choosing to participate in this review process." 74 Fed. Reg. at 61,999 (emphasis added).  HHS estimated that the cost to prepare a claim for submission to CMS would be $102, a calculation based on three hours of work by an accountant (at $34 per hour) and by a company official responsible for reviewing and gathering the necessary documents.  Id.  HHS committed to making "every effort" to return a decision within four months of receipt of the claim.  Id. at 61,936.

At no point did HHS mention either the right of a supplier—or the lack thereof—to bring a claim for breach of contract in this court. Nor did HHS state that it would oppose any such claim brought by a supplier who received partial damages through the administrative process. Rather, HHS presented the proposed claims process as a simple, straight-forward process in which a supplier gathers and submits information for specified expenses, and can look forward to receipt of compensation fairly quickly.

HHS's effort to advance its litigating position through its chosen regulatory interpretation, and the lack of clear notice regarding the agency's position prior to the filing of its current motion, also suggests that the offered interpretation may be more reflective of a favorable litigating position than a fair and considered judgment. See See Christopher, 132 S. Ct. at 2166 (stating that no deference is due to a "convenient litigating position") (quoting Bowen, 488 U.S. at 213); see also Am. Signature, Inc. v. United States, 598 F.3d 816, 827 (Fed. Cir. 2010) ("Where the agency's interpretation seeks to advance its litigating position, deference is typically not afforded to the agency's position announced in a brief.") (citing Bowen, 488 U.S. at 213).

Evidence that HHS's interpretation of the subject regulation reflects its own fair and considered judgment is wanting, and without such support the agency does not show any entitlement to Auer deference for its interpretation of 42 C.F.R. § 414.425(f)(2)(vi).

    c.    Title 42 C.F.R. Section 414.425(f)(2)(vi) Does Not Preclude B&H's Claim

Because no deference is accorded to HHS's interpretation of its regulation, the court now considers whether the regulation itself could be read to bar the claim B&H has brought here. As previously discussed, the term "judicial review"—as it appears in § 414.425(f)(2)(vi)—is a term of art. In the court's view, the regulation cannot be read to preclude plaintiff's Tucker Act claim. See Lockheed Corp., 113 F.3d at 1227 ("To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning.") (citing Perrin, 444 U.S. at 42). The regulatory prohibition against this court's judicial review of the agency's final decision on plaintiff's administrative claim does not—and cannot— interfere with this court's Tucker Act jurisdiction which allows a plaintiff to bring a claim, for which it will bear the burden of proof, as any such claimant would.

It merits mention that not only must the plaintiff prove liability in the instant action, it also bears the burden of showing that any damages it seeks from this court do not include any of the amounts already recouped through the CMS administrative

process.  See Cardiosom, 656 F.3d at 1328-29 (cautioning that an aggrieved supplier may not obtain a double recovery for the same injuries).

The court holds that 42 C.F.R. § 414.425(f)(2)(vi) does not preclude plaintiff from bringing a Tucker Act claim for breach of contract damages.  Defendant's motion to dismiss Count I on the basis that plaintiff has failed to state a claim for which relief may be granted is **DENIED**.

> d.     MIPPA's Legislative History Does Not Restrict a Supplier's Contract Remedies

Of note, the legislative history for MIPPA section 154 provides no indication that Congress intended to limit a supplier's contract remedies.  Rather, the relevant history shows that Congress focused its attention on the concerning manner in which CMS had conducted the Round 1 contracting process.  See Medicare's DMEPOS[5] Competitive Bidding Program: Hearing Before the Subcomm. on Health of the H. Comm. on Ways & Means (DMEPOS hearing), 110th Cong. (2008) ("Hrg. Rpt."), available at http://www.gpo.gov/fdsys/search/home.action (follow Congressional Hearings hyperlink on "Browse" bar on right).

Representative Fortney Stark, as Chairman of the House Subcommittee on Health of the Committee on Ways & Means, convened the DMEPOS hearing on May 6, 2008. Hrg. Rpt. 1.  On June 12, 2008, Representative Stark introduced a bill to "delay and reform" the Medicare DMEPOS Competitive Acquisition Program (CAP).  Medicare DMEPOS Competitive Acquisition Reform Act of 2008, H.R. 6252, 110th Cong. (2008), 2007 CONG US HR 6252 (Westlaw).

Eight days later, on June 20, 2008, Representative Charles Rangel introduced the bill that was later enacted as MIPPA.  Medicare Improvements for Patients and Providers Act of 2008, H.R. 6331, 110th Cong. (2008) (enacted), 2007 CONG US HR 6331 (Westlaw).  The bill introduced by Representative Stark, H.R. 6252, was included in its entirety in the bill introduced by Representative Rangel, H.R. 6331, as Section 154. Compare H.R. 6252 § 2 (Delay in and Reform of Medicare DMEPOS Competitive Acquisition Program), with H.R. 6331 § 154 (same).  Review of the judicial review withholding provision in both bills, and review of the resulting statute, reveal no

---

[5]     Durable Medical Equipment, Prosthetics, Orthotics, and Supplies

difference in the wording.  Compare H.R. 6252 § 2(a)(1)(A)(iv), and H.R. 6331 § 154(a)(1)(A)(iv), with § 1395w-3(a)(1)(D)(i).

Because the bill Representative Stark introduced, H.R. 6252, subsequently became part of H.R. 6331 (as § 154), the DMEPOS hearing convened by Representative Stark was effectively a hearing on H.R. 6331 § 154—which in turn became MIPPA § 154 (42 U.S.C. § 1395w-3).  The DMEPOS hearing thus furnishes legislative history for MIPPA § 154, the legislation at issue in this matter.

In announcing the hearing, Representative Stark, said "[w]e have heard from both suppliers and beneficiary advocates that the DMEPOS competitive bidding program is not working as well as it is supposed to.  I look forward to hearing their concerns, as well as from CMS, as we consider whether changes need to be made before the program is further expanded."  Hrg. Rpt. 2.  The acting administrator of CMS, Mr. Kerry Weems, testified and was questioned by eight[6] committee members, all of whom were critical of the CAP as it was then implemented.  See Hrg. Rpt. 6-32.  The concerns expressed by each Committee member were limited exclusively to the problematic manner in which CMS had managed the Round 1 contracting process, and the resulting impact on unsuccessful suppliers and Medicare recipients.  There was no mention during the DMEPOS hearing of the impact of any changes in the CAP on the expected contract awardees,[7] and no mention of the available remedies if any changes were made after CMS executed contracts with awardees.

II.      Count II - Breach of Contract as to Medicare Audits

Plaintiff alleges, in Count II of the Complaint, that a contractor employed by CMS conducted a routine audit of its sales to Medicare recipients, which resulted in the contractor disallowing the sale of ten power wheelchairs as not "medically necessary." Compl. ¶¶ 25, 27.  As a result of this determination, CMS's contractor withheld $31,363.90 from B&H.  Compl. ¶ 40.  Plaintiff disagreed with the determination and argued it through the Medicare appeals process.  Compl. ¶¶ 28-29, 32.

---

[6]      Fortney "Pete" Stark, Dave Camp, Mike Thompson, Sam Johnson, Xavier Becerra, Phil English, Lloyd Doggett, and Pat Tiberi.

[7]      On the day of the hearing, B&H had not yet awarded the Round 1 contracts.  See Hrg. Rpt. 7.  Although B&H signed its contract on April 1, 2008, CMS did not sign the contract until June 20, 2008.  Compl. Ex. 1, at 10-11; see also Compl. ¶ 5.

Defendant moves to dismiss Count II for lack of jurisdiction.  Def.'s Mot. 14-15.
Defendant characterizes Count II as a reimbursement dispute between HHS and a
Medicare provider, over which this court has no jurisdiction.  Def.'s Mot. 14 (citing St.
Vincent's Med. Ctr. v. United States, 32 F.3d 548, 549-50 (Fed. Cir. 1994) ("Because the
Medicare Act contains its own comprehensive administrative and judicial review scheme,
there is no Tucker Act jurisdiction over Medicare reimbursement claims.")).

The court considers whether it has subject matter jurisdiction over plaintiff's
Count II claim, and whether transfer is warranted.

A.      Subject Matter Jurisdiction

The Federal Circuit case law is clear that this court has no Tucker Act jurisdiction
to review a reimbursement dispute under the Medicare Act.

> Courts have consistently found preemption of Tucker Act jurisdiction
> where Congress has enacted a precisely drawn, comprehensive and detailed
> scheme of review in another forum . . . ." St. Vincent's Med. Ctr. v. United
> States, 32 F.3d 548, 550 (Fed. Cir. 1994).  In St. Vincent's, we held that the
> Medicare Act's "comprehensive administrative and district court review
> procedures" give rise to such preemption.  Id. at 549. . . . We concluded
> that "[b]ecause the Medicare Act contains its own comprehensive
> administrative and judicial review scheme, there is no Tucker Act
> jurisdiction over Medicare reimbursement claims." Id. at 549-50.

> We also held in St. Vincent's that "[t]he Medicare Act specifically
> precludes review of reimbursement claims by, inter alia, the Court of
> Federal Claims." Id. at 550.  We observed that "[s]ection 405(h) of title 42
> of the United States Code, read in conjunction with 42 U.S.C. § 1395ii,
> unequivocally provides that 'no action' arising under the Medicare Act
> shall be brought in any forum or before any tribunal that is not specifically
> provided for in the Medicare Act." Id. at 550. Therefore, because "[t]he
> Medicare Act does not provide for jurisdiction in the Court of Federal
> Claims; . . . [the court] is precluded from reviewing reimbursement disputes
> arising under the Act." Id. at 550.

Pines Residential Treatment Ctr., Inc. v. United States, 444 F.3d 1379, 1380-81
(Fed. Cir. 2006) (emphasis added).

The Federal Circuit also said in Pines Residential Treatment Center, that plaintiff's
attempt to style its claim as one for breach of contract was not controlling, as the claim

was in effect a Medicare reimbursement claim over which the Court of Federal Claims had no jurisdiction.  <u>Pines Residential Treatment Ctr.</u>, 444 F.3d at 1381.

Plaintiff does not dispute this court's lack of jurisdiction.  In its opposition to defendant's motion, plaintiff says only that it added Count II to the complaint due to "mandatory joinder of claims in federal courts."  Pl.'s Opp'n 18.

Although not cited, plaintiff appears to refer to Rule 18, which states a "party asserting a claim or counterclaim may join, as independent or alternative claims, as many claims as it has against an opposing party."  RCFC 18(a).  Nothing in RCFC 18(a) could provide this court with jurisdiction over plaintiff's Medicare reimbursement claim, where Congress has statutorily provided the federal district courts with jurisdiction to conduct judicial review of administrative decisions.  <u>See</u> 42 U.S.C. § 1395ff (b)(2)(C)(iii) ("Such [civil] action shall be brought in the district court of the United States for the judicial district in which the appellant is located . . . .").

Taking plaintiff's allegations stated in the complaint to be true, plaintiff is a "durable medical equipment Medicare provider," which "regularly and routinely bills Medicare for the sales and/or leases of durable medical equipment to patients."  Compl. ¶ 26.  Plaintiff's dispute arises from its sale of durable medical equipment to ten patients, for which it billed Medicare. Compl. ¶ 27.  That B&H, like Pines Residential Treatment Center, styled its claim as a breach of contract claim does not furnish this court with jurisdiction over what is clearly a Medicare reimbursement dispute.  <u>See</u> <u>Pines Residential Treatment Ctr.</u>, 444 F.3d at 1381.  And plaintiff has failed to put forth any evidence rebutting defendant's challenge to this court's subject matter jurisdiction over Count II.  <u>See</u> <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988) (stating that plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence").

B.      Transfer under 28 U.S.C. § 1631

The court is obliged to consider whether plaintiff's claim should be transferred to a court in which the action could have been brought at the time it was filed.  28 U.S.C. § 1631.

Whenever a civil action is filed in a court . . . of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, <u>the court shall</u>, if it is in the interest of justice, <u>transfer such action</u> or appeal <u>to any other such court in which the action or appeal could have been brought at the time it was filed</u> or noticed . . . .

26

28 U.S.C. § 1631 (emphasis added).

According to defendant, the relevant statute and regulations provide for five levels of appeal for a Medicare reimbursement claim, "culminating in review in Federal District Court." Def.'s Mot. 14-15 (citing 42 U.S.C. § 1395ff; 42 C.F.R. pt. 405). As described by defendant, the appellate process provides for four levels of administrative appeal prior to reaching judicial review by a federal district court,

1. Redetermination by a CMS contractor (42 C.F.R. §§ 405.940-.958);
2. Reconsideration by a Qualified Independent Contractor (QIC) (42 C.F.R.§§ 405.960-.978);
3. Hearing before an Administrative Law Judge (ALJ) within the Office of Medicare Hearings and Appeals (42 C.F.R. §§ 405.1000-.1054);
4. Review by the Medicare Appeals Council (42 C.F.R. §§ 405.1100-.1130); and
5. Judicial review in Federal District Court (if the amount of the claim is greater than $1,000) (42 C.F.R. §§ 405.1132-.1136).

Def.'s Mot. 14-15.

In order to obtain federal court review of its claim, a contractor must first either have received a Medicare Appeals Council (MAC) decision, or have filed for MAC review of an ALJ decision, but received no MAC decision within the applicable adjudication period. 42 C.F.R. § 405.1136(a).

Plaintiff filed exhibits with its complaint that document its completion of the first and second levels of administrative review. Compl. Exs. 8-9 (Contractor redetermination); Compl. Ex. 7 (QIC reconsideration). Similarly, plaintiff alleged that its appeal was denied in the "first step of the Medicare appeals process," Compl. ¶ 28, and that its second appeal was also unsuccessful, Compl. ¶¶ 29, 32. B&H was aware of its further administrative appeal rights, having made reference to its right to further appeal "before an Administrative Law Judge." Compl. ¶ 38.

Nonetheless, there is no indication in either plaintiff's allegations or the exhibits accompanying plaintiff's complaint that plaintiff exercised its right to request a hearing before an ALJ, after it received a denial from the QIC reconsideration, 42 C.F.R. § 405.1002, or that if it received an ALJ decision, that it sought MAC review of such a decision, 42 C.F.R. § 405.1102. Absent evidence that plaintiff has exhausted its

administrative appeals and is eligible to request federal court review of its claim, the court cannot find that plaintiff could have brought its claim for Medicare reimbursement in a federal district court at the time it filed its complaint in this court.  For this reason, the court declines to transfer plaintiff's Count II claim to a federal district court.

Defendant's motion to dismiss Count II for lack of jurisdiction is **GRANTED**.

III.    Conclusion

For the reasons addressed more fully above, defendant's motion to dismiss Count I is **DENIED**, and defendant's motion to dismiss Count II is **GRANTED**.  Pursuant to Rule 54(b), there being no just reason for delay, the Clerk is directed to enter judgment for the dismissal of Count II accordingly.  RCFC 54(b).

The court will contact the parties regarding further proceedings in this matter.  The court directs the parties to refrain from filing any motions for summary judgment before obtaining the consent of the court.  RCFC 56(b) ("Unless the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery.").

IT IS SO ORDERED.

 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge